## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JONATHAN GARCIA,

      Plaintiff,

      v.                                    Civ. No. 19-395 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

### MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record, Doc. 17, filed August 20, 2019, in support of Plaintiff Jonathan Garcia's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434. On October 17, 2019, Mr. Garcia filed his Motion To Reverse Or Remand The Administrative Decision, Doc. 20, along with a Memorandum Brief In Support, Doc. 21. The Commissioner filed a response on January 21, Doc. 25, and Mr. Garcia filed a reply on February 19, Doc. 26. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 9, 11, 12.

## BACKGROUND AND PROCEDURAL RECORD

Claimant Jonathan Garcia suffers from the following severe impairments: impingement syndrome in the left shoulder, degenerative changes and impingement syndrome in the left hip status post left hip arthroscopy, mood disorder, intermittent explosive disorder, attention deficit hyperactivity disorder, mood disorder, and post-traumatic stress disorder. Administrative Record ("AR") at 14. Mr. Garcia completed ninth grade and has past relevant work as a call center representative and construction laborer. AR 68, 287.

On September 24, 2015, Mr. Garcia filed a Title II and Title XVI application for benefits, alleging disability beginning August 17, 2015. AR 12, 78-79. His application was initially denied on June 10, 2016, and upon reconsideration on October 18, 2016. AR 78-79, 110-11. Mr. Garcia requested a hearing on October 26, 2016. AR 12. Administrative Law Judge ("ALJ") Lillian Richter conducted a hearing in Albuquerque on November 1, 2017. AR 31. Mr. Garcia appeared with legal representation and testified. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Susan Johnson. AR 31, 346-47. On August 13, 2018, the ALJ issued an unfavorable decision. AR 12-25. On April 15, 2019, the Appeals Council denied Mr. Garcia's request for review. AR 1-4. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. On May 1, 2019, Mr. Garcia filed a timely appeal with this Court. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.   Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-

step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory

criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in
        "substantial gainful activity."[3] If the claimant is engaged in substantial
        gainful activity, he is not disabled regardless of his medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical
        or mental impairment(s). If the claimant does not have an impairment or
        combination of impairments that is severe and meets the duration
        requirement, he is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s)
        meets or equals in severity one of the listings described in Appendix 1 of
        the regulations and meets the duration requirement. If so, a claimant is
        presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity
        one of the listings described in Appendix 1 of the regulations, the ALJ
        must determine at step four whether the claimant can perform his "past
        relevant work." Answering this question involves three phases. *Winfrey v.
        Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all
        of the relevant medical and other evidence and determines what is "the
        most [the claimant] can still do despite [his physical and mental]
        limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the
        claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3),
        416.945(a)(3). Second, the ALJ determines the physical and mental
        demands of the claimant's past work. Third, the ALJ determines whether,
        given the claimant's RFC, the claimant is capable of meeting those
        demands. A claimant who is capable of returning to past relevant work is
        not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work,
        the Commissioner, at step five, must show that the claimant is able to
        perform other work in the national economy, considering the claimant's

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

> RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It

means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

On appeal, Mr. Garcia argues that the Court should remand because: (1) the ALJ erred in according little weight to the opinion of consultative examiner Dr. Ahmed El-Emawy regarding Mr. Garcia's physical limitations, Doc. 21 at 8-9; (2) the ALJ erred in according little weight to the opinion of Mr. Garcia's treating psychologist, Dr. Laura Reardon, *id.* at 10-13; (3) the ALJ gave significant weight to the opinion of consultative examiner Dr. Paula Hughson, but failed to

incorporate all of the opinion's limitations into the RFC, *id.* at 13-14; (4) the ALJ erred in giving great weight to the opinions of the non-examining state agency over the opinion of a treating psychiatrist, *id.* at 14-15; (5) the ALJ erred in determining that Mr. Garcia's impairments are not equivalent to a listed impairment by merely stating a summary conclusion, *id.* at 15-16; (6) the ALJ failed to consider all documented limitations and thus found that Mr. Garcia could perform jobs that are clearly precluded by his functional limitations, in derogation of Social Security Ruling 96-8p, *id.* at 16-24; (7) the ALJ erred by finding that Mr. Garcia can perform jobs that are inconsistent with the RFC's limitation to "simple, routine work," *id.* at 20-21; and (8) the ALJ erred by accepting the testimony of the VE and relying on the job descriptions in the Dictionary of Occupational Titles ("DOT"), which is outdated, *id.* at 21-23.

The Court affirms the ALJ's analysis with respect to almost all of these issues. The Court does not reach argument number (3), which is insufficiently developed in the case's current posture. Ultimately, the Court agrees with Mr. Garcia with respect to argument number (7). The ALJ erred at step five by failing to resolve a conflict between the VE's testimony and the DOT. Under controlling Tenth Circuit precedent, this error requires remand.

## II.     The ALJ Did Not Err In Assigning Weight To The Medical Opinions.

Mr. Garcia argues that the ALJ erred in her analysis of the opinions of consultative examiner Dr. Ahmed El-Emawy regarding Mr. Garcia's physical limitations; of Mr. Garcia's treating psychologist, Dr. Laura Reardon; and the opinions of the non-examining state agency consultants. The Court considers each argument in turn.

### A.     Legal standard

"It is the ALJ's duty to give consideration to all the medical opinions in the record. [S]he must also discuss the weight [s]he assigns to such opinions, including the opinions of state agency medical consultants." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal

quotation marks omitted); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources."[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *accord* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2. Information from "other sources," both medical and non-medical, are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *see* SSR 06-03p, 2006 WL 2329939, at *2.

> The ALJ must evaluate medical opinions according to the following factors:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011); 20 C.F.R. §§ 404.1527(c), 416.927(c).

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

[5] "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

The ALJ is not, however, required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

B.    Dr. Ahmed El-Emawy

New Mexico Disability Determination Services ("DDS") consulting physician Dr. Ahmed El-Emawy, MD, examined Mr. Garcia in May 2016. AR 769-73. Dr. El-Emawy

conducted a record review, interviewed Mr. Garcia, performed a physical examination, and

issued a diagnostic impression and a functional assessment. *Id.* He stated:

> The number of hours the claimant can stand in an eight-hour workday based on
> today's exam is expected to be less than two hours. The number of hours the
> claimant can walk in an eight hour workday based on today's exam is expected to
> be less than two hours. The number of hours the claimant can sit in an eight hour
> workday based on today's evaluation is expected to be about two hours.

AR 772.

> The ALJ evaluated this opinion as follows:

> In May 2016, the state agency referred the claimant for a consultative
> examination at which he reported experiencing left hip pain exacerbated by [a]
> motor vehicle collision, with constant swelling and aching worsened by sitting,
> standing, and walking (Exhibit 9F, p. 2 [AR 769]). The only medication for pain
> the claimant was taking was gabapentin (Exhibit 9F, p. 3 [AR 770]). He reported
> no issues relating to gastroesophageal reflux disease or irritable bowel syndrome.
> On physical examination, the claimant had soft, non-tender, and non-distended
> abdomen with normal bowel sounds (Exhibit 9F, p. 4 [AR 771]). The claimant
> had decreased flexion and abduction in the left hip. He had normal gait, normal
> toe walking, and only slight difficulty with heel walking. The claimant reported
> using crutches for walking long distances. The consulting physician found the
> claimant to have only slight tenderness to palpation and slightly decreased range
> of motion in the left hip that might improve with physical therapy (Exhibit 9F, p.
> 5 [AR 772]). He opined that the claimant could stand and walk less than two
> hours each in an eight-hour workday, and that he could sit for two hours in an
> eight-hour workday. The consulting physician further opined that the claimant
> could lift 50 pounds occasionally and 30 pounds frequently, and that he could
> carry 40 pounds occasionally and 30 pounds frequently. He further opined the
> claimant could bend, stoop, crouch, and squat occasionally. The undersigned
> accords this opinion little weight as it does not appear supported by the rather
> minimal exam findings during which the examiner noted only slight tenderness,
> normal gait and no acute distress. I also note it is not consistent with the evidence
> of the claimant's workout routine described above at Exhibit 7F/6 [AR 707].

AR 19-20.

Mr. Garcia argues that the ALJ erred because her "claim of inconsistency was conclusory

and represents an impermissible superimposition of her own opinion over that of a medically

qualified examiner." Doc. 21 at 9 (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.

2002)). It is true that an ALJ may not rely on conclusory statements or her own lay opinion to

reject a medical opinion. *McGoffin*, 288 F.3d at 1252-53. But it is not true that the ALJ did either in this case. First, the ALJ's reasoning is not conclusory. The ALJ did not merely conclude that Dr. El-Emawy's opinion is not supported—she explained why. AR 20 ("it does not appear supported by the rather minimal exam findings during which the examiner noted only slight tenderness, normal gait and no acute distress"). Mr. Garcia does not specifically challenge this explanation. He does not point to more-than-minimal exam findings, nor does he dispute that the examiner noted only slight tenderness, normal gait, and no acute distress.

Second, the ALJ did not impermissibly substitute her lay opinion. A "physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1029 (10th Cir. 1994). The question of whether a physician's opinion is supported by specific findings is not a medical judgment, it is a task that the regulations consign to the ALJ. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("the degree to which the physician's opinion is supported by relevant evidence"); *cf. Castellano*, 26 F.3d at 1029 (ALJ properly rejected medical opinion for lack of objective evidence); *see also Block v. Astrue*, 506 F. App'x 764, 768 (10th Cir. 2012) (ALJ was permitted to reject consultative examiner's opinion for lack of supporting objective evidence where the physical "examination revealed [the claimant] was stiff and sore in the neck, tender to palpation, and his shoulder range of motion was decreased").

Mr. Garcia also argues that the ALJ was not permitted to rely on his workout routine described at AR 707. Doc. 21 at 9. AR 707 is a treatment note from Dr. Laura Reardon where she states: "He has increased his exercise at home. He is doing pushups, situps, 'football workouts.'" AR 707. Mr. Garcia does not dispute that an ALJ may rely on a claimant's activities of daily living to evaluate whether a medical opinion is an accurate reflection of what the

claimant can do. Instead, he argues that the evidence at AR 707 is not probative because it does not describe the frequency or duration of the workouts. Doc. 21 at 9. He cites no authority for the proposition that an ALJ may not rely on activities of daily living unless they are described to a certain level of specificity. The Court finds that AR 707 is substantial evidence for the ALJ's decision. The ALJ reasonably relied on the report that Mr. Garcia was capable of performing a "football" level workout, around the same time frame as a consulting physician found that he could not stand or walk for two hours in a normal workday without pain.

The Court therefore finds that the ALJ properly explained her reasons for giving Dr. El-Emawy's opinion on Mr. Garcia's functional limitations little weight and that substantial evidence supports this decision.

C.    Dr. Laura Reardon

In February 2017, Dr. Laura Reardon filled out a series of psychiatric questionnaires regarding Mr. Garcia's mental health. AR 774-81. She expressed a diagnosis of chronic PTSD. AR 775. She found that he met the criteria for listings § 12.04, depressive disorders; § 12.06, anxiety disorders; § 12.08, personality disorders; and § 12.15, trauma-related disorders. AR 777-80. She opined that Mr. Garcia suffers from marked limitations in the ability to understand, remember, or apply information, and extreme limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself. AR 781. At step three,[6] the ALJ acknowledged these opinions but assigned them "little weight." AR 16. The ALJ explained that Dr. Reardon's "statement does not clearly identify findings that support these limitations, and treatment records do not document a level of treatment consistent with listing-

---

[6] The ALJ does not again discuss Dr. Reardon's opinion when assessing the RFC. Typically, step three findings do not translate to determining functional limitations at step four. But Mr. Garcia does not raise this as an error.

level dysfunction, as they show intermittent compliance and treatment, and generally intact mental status findings." AR 16. The ALJ "additionally note[d] that the claimant reported that he takes care of his children and can go to the pool and amusement park with them, activities which are not consistent with the level of impairment assessed" by Dr. Reardon. *Id.*

Mr. Garcia argues that Dr. Reardon's opinion is entitled to "controlling weight" as the opinion of his treating physician. Doc. 21 at 9-11. He argues that the opinion is "supported by her clinical evaluations and cognitive-behavioral therapy treatment." *Id.* at 9. He also highlights a variety of clinical evidence in the record that could be consistent with her opinion. *Id.* at 11. Mr. Garcia's argument misses the point. The Court does not weigh the record evidence in this manner. It only reviews an "ALJ's decision to accord less than controlling weight" to the opinion of a treating physician for substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (in determining whether substantial evidence existed, the court cannot reweigh the evidence or substitute its judgment for the ALJ's); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012) ("The ALJ, however, was free to resolve evidentiary conflicts because there is substantial evidence to support his conclusion.").

To support her decision in this case, the ALJ cited Mr. Garcia's "intermittent compliance and treatment, and generally intact mental status findings." AR 16 (citing Exhibits 13F, pp. 2, 5, 7-8 [AR 803, 806, 808-09]; 14F, pp. 2-3, 26-27 [AR 812-13, 836-37]). Later in her narrative, the ALJ explained that "[s]ubsequent mental health progress notes have shown continued reports of symptoms paired with unremarkable mental status examinations showing grossly intact cognition." AR 22 (citing Exhibit 13F, pp. 2, 5, 7-8 [AR 803, 806, 808-09]; 14F, pp. 26-27 [AR 836-37]). "Progress notes further show the claimant self-discontinued psychotropic medications

and intermittently self-administered medical marijuana." *Id.* (citing Exhibits 13F, p. 2 [AR 803];
14F, p. 27 [AR 837]; 14F, p. 3 [AR 813]). In addition, elsewhere in her narrative,[7] the ALJ
separately described treatment notes at Exhibit 2F, p. 7 [AR 532]; Exhibit 7F, p. 24 [AR 725];
Exhibit 7F, pp. 14, 16 [AR 715, 717]; and Exhibit 7F, p. 8-9 [AR 709-10]. *See* AR 20-21.
Contrary to Mr. Garcia's arguments, the ALJ's record citations constitute substantial evidence to
support her findings. The Court will describe each one in turn, examining whether the ALJ
misconstrued the record or ignored substantially probative evidence.

*Treatment note from August 17, 2015.* The ALJ explained that "On mental status
examination, the claimant had anxious mood and congruent affect, but thought content and
thought process were within normal limits, grossly intact cognition, and good judgment and
insight." AR 20. This description is accurate; Dr. Reardon observed "mildly anxious" behavior
and an "anxious" mood and otherwise normal mental status. AR 533.[8]

*Treatment note from January 15, 2016.* Similarly, Dr. Reardon's mental status
examination on this date cited by the ALJ, AR 20, documents anxiety and irritability, a
constructed affect, and otherwise normal results. AR 725.

*Treatment note from February 3, 2016.* The ALJ acknowledges that this note from Dr.
Umpierre reports "symptoms of hypervigilance, nightmares, and impaired sleep," but that the

---

[7] The Commissioner may rely on these observations even though they were made outside the
context of the ALJ's discussion of Dr. Reardon's opinion. *Endriss v. Astrue*, 506 F. App'x 772,
777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence
earlier in his decision and he is not required to continue to recite the same evidence again in
rejecting Dr. Wright's opinion."); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721
(10th Cir. 2018) ("While Mr. Webb takes issue with the ALJ's general reference to medical
records 'all discussed above,' in this case it is not difficult to determine what inconsistencies the
ALJ relied upon." (citation omitted)).

[8] The exam measured Mr. Garcia's appearance, behavior, speech, mood, thought process and
thought content, sensorium, cognition, and insight and judgment. AR 533.

"mental status examination showed normal cognition and memory." AR 20. This is accurate; the mental status exam documented a dysthemic mood, constructed affect, and below average intelligence, but was otherwise normal. AR 717. Dr. Umpierre separately observed that Mr. Garcia's "[c]ognition and memory are normal." *Id.* The ALJ also noted that the "[a]ssessment from this encounter included intermittent explosive disorder, ADHD, PTSD, and a Global Assessment of Functioning (GAF) of 51-60." AR 20-21. The ALJ gave "great weight" to this GAF score. AR 21 n.1.

*Treatment note from March 2, 2016.* In this encounter, according to the ALJ, "the claimant reported experiencing agitation and anger, and that he had self-discontinued previously prescribed guanfacine . . . the claimant had normal mental status examination and euthymic mood with full affect." AR 21. This is accurate; Dr. Umpierre conducted a mental status exam that was normal in all respects. AR 710.

*Treatment note from September 27, 2016.* This treatment note from Dr. Reardon reflects a report of compliance with Buspar and Mr. Garcia's statement that "he feels less angry while taking it." AR 808. Dr. Reardon conducted a mental status exam which recorded "aggressive behavior, anxiety and bad mood," a dysthymic mood, constricted affect, and otherwise normal findings. AR 809. Mr. Garcia stresses that this note records his "angry affect," "avoidant and aggressive behavior," "poor sleep," "concrete thought process,"[9] and that he was "compliant with psychiatric medication." Doc. 21 at 12. Mr. Garcia overlooks, however, that Dr. Reardon's "clinical impression" was relatively mild: "Patient is stable. Coping ability considered fair. Progress in therapy is considered fair." AR 809. And while Dr. Reardon noted compliance with

---

[9] A "concrete thought process" is probably not an abnormality supporting a listing-level disfunction.

Buspar, Mr. Garcia fails to acknowledge that the note also supports the ALJ's observation that his compliance with medication was "intermittent": the progress note also reveals that he self-discontinued taking Abilify due to side effects. AR 808. Again, the Court finds that the ALJ did not misconstrue the record.

*Treatment note from October 10, 2016*. The ALJ cited this progress note from Dr. Umpierre which reflected a complaint of "moderate" symptoms. AR 803. The doctor reported that "[h]e continues to be explosive but it does not appear to be as intense as it was." *Id.* The mental status exam was normal in all respects. Mr. Garcia stresses the use of the word "explosive," Doc. 21 at 12, but given the full context of the line from this progress note which denotes some level of progress in Mr. Garcia's symptoms, the Court does not agree that the ALJ mischaracterized this record as containing findings that do not support a listing-level dysfunction. AR 16.

*Treatment note from November 7, 2016*. This note from Dr. Reardon documents a mental status exam reflecting "bad mood and irritability," a dysthemic mood, blunted affect, and otherwise normal results. AR 837. She documented Mr. Garcia's complaints of restless sleep, anger, mood dysregulation, avoidant and aggressive behavior, negative bias, and threat perception. AR 836-37. Mr. Garcia stresses her observations of his angry affect, avoidant and aggressive behavior, and poor sleep, Doc. 21 at 12, but the ALJ's observation that the mental status examination was largely "unremarkable" and revealed "grossly intact cognition," AR 22, is accurate.

*Treatment note from July 18, 2017*. In this note from Dr. Reardon, she reveals that Mr. Garcia reported that "he is not currently taking any psychiatric meds." AR 813. The mental status exam was normal in all respects. *Id*. Dr. Reardon's clinical impression was: "Patient is

stable. Coping ability considered fair. Progress in therapy is considered fair. He is able to verbalize insight into his behavior." *Id.* Mr. Garcia stressed that Dr. Reardon continued to note "anxiety" and that the treatment note reflects that he was "following up with his care providers regarding psychiatric medications." Doc. 21 as 12. While these observations are true, AR 813, they do not undermine or contradict the ALJ's observations that the mental status exam was normal, AR 16, 22, and that Mr. Garcia reported that he "self-discontinued psychotropic medications." AR 22.

In sum, the Court finds that the ALJ accurately characterized the record and cited substantial evidence in support of her opinion. The fact that Mr. Garcia can identify conflicting evidence is simply a challenge to the ALJ's weighing of the evidence, a task this Court does not perform on appeal. *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir 2007). Of course, the Court may overturn the ALJ if her decision "is overwhelmed by other evidence in the record," *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004), or if she "mischaracterizes" evidence, *Talbot v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987). But Mr. Garcia's evidence does not "overwhelm" the evidence cited by the ALJ. For example, he identifies one instance in which the mental status exam demonstrated "fair to limited insight and often limited judgement." Doc. 21 at 11 (citing AR 764). This remark from consultative examiner Dr. Houston does not "overwhelm" the multiple normal findings on Mr. Garcia's judgment and insight in the mental status exams conducted by treatment providers cited by the ALJ. AR 16, 20-21.

Mr. Garcia is correct that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). But the ALJ did not *ignore* the evidence that Mr. Garcia highlights. *E.g.*, Doc. 21 at 11. The ALJ acknowledged records from treatment providers

where Mr. Garcia reported "having lost jobs over inability to sit still and verbal aggression," had an "anxious mood" on mental status examination, complained of "symptoms of hypervigilance, nightmares, and impaired sleep," was assessed with "intermittent explosive disorder, ADHD, [and] PTSD," and reported "experiencing agitation and anger." AR 20-21. The ALJ acknowledged consulting examiners' reports of anger, inability to focus, anxiousness and hypervigilance, sleep impairment, nightmares, an "irritable and angry mood," homicidal and suicidal ideation without plan or intent, flashbacks and night terrors, and limited judgment and fair to limited insight. AR 21. The ALJ simply found that this evidence was outweighed by "observations that he was fully oriented, had relevant thought content and linear thought processes and had a low to average estimated intelligence." *Id.*

This was not error. Normal findings on mental status examination are substantial evidence of a claimant's mental functioning. *E.g.*, *Beasley v. Colvin*, 520 F. App'x 748, 752 (10th Cir. 2013); *Adcock v. Commissioner*, 748 F. App'x 842, 846 (10th Cir. 2018). The Court's role is not to revisit this conclusion. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.").

Finally, Mr. Garcia challenges the ALJ's reliance on his activities of daily living in discounting Dr. Reardon's listing opinions. Doc. 21 at 12-13. The ALJ noted that Mr. Garcia "reported that he takes care of his children and can go to the pool and amusement park with them, activities which are not consistent with the level of impairment assessed" by Dr. Reardon. AR 16. Contrary to Mr. Garcia's argument, the ALJ did not mischaracterize the evidence in the

record. Dr. Reardon did in fact report in June of 2016 that Mr. Garcia "[t]akes his son to the pool

or the park" and "[p]lans to take his kids to the amusement park this weekend." AR 625-26. Mr.

Garcia's testimony that he didn't "go to the pool all the time," AR 62, does not contradict the

ALJ's reliance on Dr. Reardon's report that he was able to do so shortly before Dr. Reardon

opined that Mr. Garcia suffers from listing-level disabilities. The ALJ also relied on Mr. Garcia's

ability to take care of his children while his wife was at work. AR 16, 62. Contrary to Mr.

Garcia's representation in his brief, he did not at the hearing deny this activity:

> [Mr. Garcia:] And when -- about the -- my wife, when she needs, like - because
> we don't, like, have to watch the kids when she can't be with me, because her
> work won't let her.
>
> [ALJ:] Right. When she goes to work, then you have responsibilities for the
> children?
>
> [Mr. Garcia:] Yes.

AR 62-63. Substantial evidence supports the ALJ's decision.[10]

## III.     The Court Does Not Decide Whether the ALJ Erred In Analyzing Dr. Hughson's Opinion.

Mr. Garcia argues that the ALJ gave significant weight to the opinion of consultative

examiner Dr. Paula Hughson but failed to incorporate all of the opinion's limitations into the

RFC. Doc. 21 at 13-14. Dr. Hughson opined that Mr. Garcia "has the capacity to understand and

perform a simple work sequence and should be able to persist at such work for at least four

hours." AR 766. In a check-the-boxes-style attachment to her opinion, Dr. Hughson found

moderate limitations in Mr. Garcia's ability to attend and concentrate, carry out instructions,

---

[10] Because the Court finds that the ALJ reasonably gave "little weight" to Dr. Reardon's opinion, it also finds that the ALJ did not err by giving more weight to the state agency consultants' opinions. *Cf.* Doc. 21 at 14-15 (arguing that the opinions of a treating physician are entitled to more weight than the non-examining state agency consultants' opinions).

work without supervision, and adopt to changes in the workplace. AR 767. Mr. Garcia argues

that the ALJ cannot both accord this opinion "significant weight" and ignore the moderate

limitations in these abilities that are required for all work. Doc. 21 at 13-14. Mr. Garcia cites an

unpublished Tenth Circuit decision, *Parker v. Commissioner, SSA*, which explains that "[i]f the

agency had decided to omit particular limitations embodied in [a] medical opinion[], the agency

needed to explain the omissions." 772 F. App'x 613, 615 (10th Cir. 2019).

The Commissioner argues that the moderate limitations are accounted for because the

RFC "limited Plaintiff[] to understanding and remembering only simple, routine, repetitive tasks;

to only occasional interaction with others and no tandem work; to no assembly-line or production

pace work; and to making only simple decisions in a routine work setting." Doc. 25 at 18. The

Commissioner cites no authority in support of this argument.

The Court does not necessarily agree with the Commissioner that a restriction to

unskilled work accounts for any and all moderate nonexertional limitations. The abilities to

attend and concentrate, carry out instructions, sustain an ordinary routine without special

supervision, and adapt to changes in the workplace are needed for all work, even simple work.

Social Security Administration Program Operations Manual System ("POMS"), § DI 25020.010,

§ B(2)(a) & (d). The Tenth Circuit instructs that unskilled work *may* account for certain

limitations, but that it does not necessarily do so. *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th

Cir. 2012) (a claimant's mental functions and issues of skill transfer may often have little to do

with each other, as mental functions are "general prerequisites for most work at any skill level");

Vigil v. Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015) (unskilled work accounted for evidence

that the claimant had some problems with concentration, persistence, and pace such that he could

not be expected to perform complex tasks). In other words, this is a complicated, case-specific assessment that cannot be performed in one sentence.

On the other hand, the Court does not necessarily agree with Mr. Garcia. Mr. Garcia cites very little authority in support of his argument and does not grapple with questions such as whether the moderate limitations expressed in the worksheet actually constitute Dr. Hughson's opinion, or whether Dr. Hughson's (rather colorful) narrative constitutes her opinion. *See Smith v. Colvin*, 821 F.3d 1264, 1268 n.1 (10th Cir. 2016) (a check-the-boxes worksheet may be a guide to the opinion, and not the opinion itself).

Because the parties do not sufficiently brief this matter, and because the Court remands on other grounds, it does not reach a conclusion on this issue.

## IV.    The ALJ Did Not Err At Step Three.

Mr. Garcia argues that the ALJ erred at step three in determining that his impairments did not meet any listings for mental conditions. Doc. 21 at 15-16. He contends that the ALJ stated summary conclusions that he did not meet the listing criteria, without stating the objective medical evidence supporting her conclusions, in violation of the Tenth Circuit's ruling in *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1995).

In *Clifton*, the Tenth Circuit reversed where the ALJ "did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." 79 F.3d at 1009. ALJ Richter in this case did considerably more than state a summary conclusion: she identified listings, 12.04, 12.08, 12.11, and 12.15, discussed the "paragraph B" criteria of each, identified the general topic of the medical evidence she relied upon, and (in a rather unusually extensive manner) examined the opinion evidence on the topic. AR 15-16. This is a far cry from the reversible error in *Clifton*.

In any event, the Tenth Circuit has subsequently indicated that *Clifton* has limited application: "*Clifton* sought only to ensure sufficient development of the administrative record and explanation of findings to permit meaningful review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). But where an ALJ provides detailed findings at step four, which are either unchallenged or confirmed by the court, no reversal is required under *Clifton*. *Id.* The more pertinent question to ask is "[w]hether the ALJ's findings at steps four and five justify [her] step three conclusion." *Id.*

The Court thus rejects Mr. Garcia's arguments. The ALJ did not err at step three by stating summary conclusions; and even if she had, the Court would affirm because the ALJ's step-four determination is supported by substantial evidence, and this in turn justifies a step-three finding that Mr. Garcia has no listing-level impairments.

**V.       The ALJ Followed Social Security Ruling ("SSR") 96-8p.**

Mr. Garcia argues that "[t]he ALJ failed to consider all documented limitations and found that Mr. Garcia could perform jobs that are clearly precluded by his functional limitations," in derogation of SSR 96-8p. Doc. 21 at 18. SSR 96-8p requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities." 1996 WL 374185, at *2. "The concern is that, without a function-by-function analysis, an ALJ 'may overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374185, at *4 (internal alteration omitted)).

Specifically, Mr. Garcia argues that the ALJ overlooked the following restrictions: Mr. Garcia's limitations on sitting; concentration; understanding or applying information; and social functioning. Doc. 21 at 18-21. As set forth below in more detail, the Court disagrees with this argument. As in *Hendron*, "the ALJ did not overlook [Mr. Garcia]'s problems with sitting [and

other limitations]; [s]he found that the evidence did not support any limitation on [these] abilit[ies] during the Relevant Time Period." 767 F.3d at 957. Here, too, the ALJ discussed these limitations at step four and found the evidence did not support more restrictive limitations. The Court has already found that substantial evidence supports the ALJ's step-four analysis. Thus, there is no error.

A.   The finding that Mr. Garcia can perform sedentary work is supported by substantial evidence.

Mr. Garcia argues that "[t]here is not even a scintilla of evidence upon which the ALJ could support her finding of ability to engage in sedentary work for a full day." Doc. 21 at 19. The only evidence cited by Mr. Garcia in support of his argument is that Dr. El-Emawy assessed functional limitations that would preclude even sedentary work. Doc. 21 at 19 (citing AR 772). As explained earlier, however, the ALJ did not "overlook" this function; she affirmatively found the evidence did not support the limitation Mr. Garcia claims. She properly accorded little weight to Dr. El-Emawy's opinion, and accorded greater weight to the treatment records documenting non-attendance at physical therapy; improvement in strength function in October 2015 after a surgery; pain complaints disproportionate to the objective findings on examination; normal ambulation, gait, and station; well-healed surgical incisions in March 2016 and tender tight bands in the left gluteus medius and maximus, normal muscle tone, and normal coordination; and few objective findings on physical examination in October 2016. AR 18-20. In addition, the ALJ tempered the opinions of the non-examining state agency consultants that Mr. Garcia could perform medium work, instead according more weight to Mr. Garcia's own testimony regarding his limitations on standing and walking. AR 20.

Mr. Garcia does not specifically challenge any of these findings as unsupported by substantial evidence. The Court will not remand on this basis.

B.   The ALJ's omission of limitations on concentration, understanding or applying information, and social functioning was supported by substantial evidence.

Mr. Garcia argues that the ALJ should have included a limitation on concentration because Dr. Reardon indicated "extreme" impairment in Mr. Garcia's ability to maintain concentration, pace and persistence,[11] and because the ALJ found a "moderate" limitation in concentration, persistence and pace under the paragraph B criteria of the listings at step three. Doc. 21 at 19-20. The Court rejects both arguments. As the Court explained above, the ALJ's rejection of Dr. Reardon's opinion was supported by substantial evidence. In addition, the "moderate limitations" found at step three do not constitute an RFC assessment and are used solely to rate the severity of mental impairments at steps two and three of the sequential evaluation process. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). As such, the ALJ should not include these ratings in her RFC finding, but should engage in a separate, and "more detailed" analysis at step four. SSR 96-8p, 1996 WL 374184, at *4; *Vigil*, 805 F.3d at 1203. The ALJ did not err by following SSR 96-8p's instruction to evaluate steps three and four independently of each other.

The Court rejects Mr. Garcia's final two arguments for the same reasons. Mr. Garcia argues that the ALJ should have incorporated Dr. Reardon's findings of a limitation on the ability to understand or apply information, and extreme impairment in social functioning. Doc. 21 at 20-21 (citing AR 781). Again, the ALJ did not "overlook" these areas of functioning. As explained above, the ALJ was not required to adopt Dr. Reardon's opinion. The ALJ credited the

---

[11] Mr. Garcia argues that a limitation is additionally supported by Dr. Hughson's finding of a "moderate" impairment in this area of functioning. Doc. 21 at 19 (citing AR 767). As explained above, the Court does not reach a determination on the issue of whether the ALJ erred in evaluating Dr. Hughson's opinion. For purposes of Mr. Garcia's SSR 96-8p argument, in any event, the Court finds that the ALJ did not "overlook" this area of functioning.

opinions of Dr. Hughson and the non-examining state agency consultants with respect to Mr.

Garcia's non-functional limitations, including his social limitations. Mr. Garcia's argument is

therefore misplaced.

**VI.    At Step Five, The VE Testimony Was Not Unreliably Outdated, But The ALJ Erred By Failing To Resolve A Conflict Between The VE Testimony And The DOT.**

Mr. Garcia argues that there are additional errors with ALJ's reliance on the VE

testimony at step five: first, that the VE testimony was unreliable because she relied on outdated

information; and second, that the VE's testimony conflicted with the DOT and the ALJ failed to

resolve this conflict. The Court rejects the first argument, but agrees with the second and

therefore must remand this case.

A.      The VE was entitled to rely on the DOT.

Mr. Garcia argues that "[t]he VE testimony is inherently unreliable because the DOT

description of the addresser job was last updated in 1991, and envisions a worker using a pen or

a typewriter to address envelopes." Doc. 21 at 22; *see also id.* ("Basic scanners and computers

have rendered microfilming obsolete, and are affordable for even small businesses. A filing

system using 'index cards' is also not likely to be used in 45,000 businesses, which is the number

of these jobs the ALJ found to exist."). While the Court is sympathetic to Mr. Garcia's appeal to

common sense, it is precluded by the Commissioner's regulations and Tenth Circuit precedent.

20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) ("we will take administrative notice of reliable job

information available from various governmental and other publications," for example, the

"Dictionary of Occupational Titles, published by the Department of Labor"); *Haddock v. Apfel*,

196 F.3d 1084, 1089-90 (10th Cir. 1999); *Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir.

2008) ("It is well established that the agency accepts the definitions in the Dictionary of

Occupational Titles as reliable evidence . . . ." (internal quotation marks omitted)). Finally, the

ALJ's determination of job numbers is supported by substantial evidence, i.e., the testimony of the VE. AR 70-71; *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019). The Court therefore rejects Mr. Garcia's argument.

B.      <u>The ALJ failed to resolve a conflict between the VE's testimony and the DOT.</u>

The Court agrees with Mr. Garcia that there was an apparent conflict between the VE testimony and the DOT for which the ALJ failed to account.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit agreed with the claimant that there is an apparent conflict between level-three reasoning[12] and simple work restrictions. It held that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this conflict. *Id.*

Mr. Garcia argues for remand along this exact reasoning. The RFC limits him to "simple, routine, and repetitive work," "hearing, understanding, and communicating simple information," and "making simple work-related decisions." AR 17. At step five, the ALJ found that Mr. Garcia could perform the jobs of addresser, document preparer, and surveillance systems monitor. AR 24. According to the DOT, two of these jobs are reasoning-level-three. *See* DOT 249.587-018 Document Preparer, 1991 WL 672349; DOT 379.367-010 Surveillance-System Monitor, 1991

---

[12] A reasoning level of three describes a job that requires the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and requires "[d]eal[ing] with problems involving several concrete variables in or from standardized situations." DOT, Appx. C, § III, 1991 WL 688702.

WL 673244. Under *Hackett*, therefore, the ALJ was required to evaluate this apparent conflict and, based on her assessment of this conflict, either (1) explain why it was reasonable to conclude that Mr. Garcia would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job requirements and his abilities, *or* (2) reject the VE testimony due to the conflict. The ALJ here did neither.

The Commissioner argues that Mr. Garcia waived this argument. Doc. 25 at 19 ("Plaintiff provides no legal support for his argument"). The Commissioner is correct that Mr. Garcia cited no legal support for his argument, and the Court is sympathetic to the Commissioner's point. The principle laid out in *Hackett*, however, is not an obscure one requiring a great deal of the Court's time to evaluate. In fact, error under *Hackett* occurs with relative frequency. In the context of this case, the Court finds it sufficient that Mr. Garcia raised this issue, described the reasoning levels of the jobs, and argued that they are inconsistent with simple routine work. Doc. 21 at 20-21. Because binding Tenth Circuit precedent agrees with Mr. Garcia (even if he didn't cite it) that the reasoning level of these jobs appears inconsistent with simple, routine work, the Court must remand for the ALJ to resolve this inconsistency.

## **CONCLUSION**

For the reasons stated above, Mr. Garcia's Motion To Reverse Or Remand The Administrative Decision, Doc. 20, is **GRANTED.**


**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**